**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diversified Roofing Corporation, an Arizona corporation, Roadrunner Drywall Corporation, an Arizona corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Pulte Home Corporation, a Michigan corporation, Pulte Development Corporation, a Michigan corporation,<br><br>Defendants. | No. CV12-1880 PHX DGC<br>    CV12-2177 PHX DGC<br><br>**ORDER** |

Before the Court is the motion to remand by Diversified Roofing Corporation ("Diversified") (Doc. 10; CV-12-1880) and applications to stay arbitration proceedings by Diversified (1-1; CV-12-1880) and Roadrunner Drywall Corporation ("Roadrunner") (Doc. 8; CV-12-2177). The motion and applications are fully briefed. For the reasons that follow, the Court will grant Diversified's motion to remand and deny Roadrunner's application.[1]

**I.   Background.**

Pulte Home Corporation and Pulte Development Corporation (collectively "Pulte"), Diversified, and Roadrunner entered into a Master Trade Agreement in June of 2011 (the "Agreement"). Doc. 13 at 3 (CV-12-1880). Under the Agreement, Diversified

---

[1] The parties' requests for oral argument are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

and Roadrunner acted as subcontractors to Pulte in the construction of the Festival Foothills housing community in Buckeye, Arizona. *Id.* The Agreement provides that any "litigation arising between the parties in relation to this Agreement shall be initiated and maintained in the state or federal courts in the State in which the Work is performed." Doc. 1-1 at 52, ¶ 29.7 (CV-12-2177). An exception is found in the Indemnity section of the Agreement:

> In the event Indemnitees are required to mediate or arbitrate a Claim with a homeowner arising out of or relating to the Work performed under this Agreement, Indemnitees may, in their sole discretion, require Contractor to participate in the mediation and/or arbitration in accordance with the Federal Arbitration Act[.]

Doc. 1-1 at 45, ¶ 20.3 (CV-12-2177) (referred to herein as the "arbitration provision").

In October 2011, homeowners in the Festival Foothills community demanded arbitration and asserted various alleged defects in their homes, including defects in work performed by Diversified and Roadrunner. Doc. 13 at 3 (CV-12-1880). Pulte gave Diversified and Roadrunner notice of these claims and tendered the defense of the claims. *Id*. Pulte then demanded that Diversified and Roadrunner participate in the arbitration and help defend against the claims asserted by the homeowners as provided for in the arbitration provision. *Id.*; Doc. 4 at 4 (CV-12-2177).

In response, Diversified filed an application in Maricopa County Superior Court on July 20, 2012, to stay the arbitration proceedings under A.R.S. § 12-1502(B). Doc. 1-1 at 3 (CV-12-1880). Pulte was served on August 9, 2012, and on that same day filed a response to Diversified's application. Doc. 1 (CV-12-1880). On September 6, 2012, Pulte removed the action to this Court on the basis of diversity jurisdiction. *Id.*

On September 21, 2012, Roadrunner filed an action in Maricopa County Superior Court to stay the arbitration proceedings. Doc. 1-1 at 3 (CV-12-2177). Prior to filing a response in state court, Pulte removed the action to this Court on the basis of diversity jurisdiction. Doc. 1 (CV-12-2177).

On November 1, 2012, Diversified, Pulte, and Roadrunner submitted a joint

motion to consolidate the two actions. The Court granted the motion on November 26, 2012. Doc. 21 (CV-12-1880); Doc. 12 (CV-12-2177).

## II.     Motion for Remand by Diversified.

Pursuant to the removal statute, 28 U.S.C. § 1441, any civil action brought in state court over which the federal district courts have original jurisdiction may be removed to the federal court in the district where the action is pending. Courts strictly construe the statute against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Indeed, there is a "strong presumption" against removal and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id*. This strong presumption "means that the defendant always has the burden of establishing that removal is proper." *Id.* "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Diversified has filed a motion to remand on the grounds that Pulte waived its right to remove and that Pulte is not a "defendant" with the right to remove under 28 U.S.C. § 1441. Doc. 10 (CV-12-1880).

A defendant may waive the right to remove by "tak[ing] actions in state court that manifests his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum." *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994) (citations omitted). "A waiver of the right of removal must be clear and unequivocal." *Id.* (citations and quotation marks omitted). "In general, the right of removal is not lost by action in the state court short of proceeding to an adjudication on the merits." *Id.*

It is well-settled that merely filing a responsive pleading does not invoke the state court's jurisdiction so as to constitute a waiver of the right to remove. *Acosta v. Direct Merchs. Bank*, 207 F. Supp. 2d 1129, 1131 (C.D. Cal. 2002). On the other hand, "[e]xamples of actions that would indicate an intent to waive removal include filing a permissive cross-complaint, *Schmitt v. Ins. Co. of N. Am.*, 845 F.3d 1546, 1548 (9th Cir.

1988), moving to compel arbitration, *McKinnon v. Doctor's Assocs., Inc.*, 769 F. Supp. 216, 220 (E.D. Mich. 1991), and arguing and losing an issue in state court in which removal would act as an appeal of an adverse state court decision, *Rosenthal v. Coates*, 148 U.S. 142, 147 (1893)." *Koklick v. Cal. Dept. of Corrs.*, 2012 WL 653895, *4 (E.D. Cal. 2012).

Diversified argues that Pulte waived the right to remove by filing "a substantive and potentially dispositive response in state court." Doc. 10 at 4 (CV-12-1880). Diversified contends that Pulte did not contemplate removing this action until after Diversified declined to consent to Pulte's petition to supplement its response, and thus removed "to engage in forum shopping." *Id.* at 5, 6. The procedure for obtaining a stay of an arbitration proceeding under A.R.S. § 12-1502(B) supports Diversified's argument.[2]

A.R.S. § 12-1502(B) allows a party opposing arbitration to seek a court order staying the arbitration upon a showing that there is no agreement to arbitrate. "Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried." A.R.S. § 12-1502(B). After an application has been made, the court has power to decide whether there is an agreement to arbitrate. *Foy v. Thorp*, 920 P.2d 31, 34 (Ariz. Ct. App. 1996) ("Because [A.R.S. § 12-1502(B)] gives the court the power to try the issue of whether there is an agreement to arbitrate, and simultaneously gives the court the power to stay an arbitration proceeding that is already commenced, it necessarily gives the court the power to decide the issue in the first instance."). Accordingly, after Pulte responded to Diversified's application and Diversified filed its reply, the issue of whether there was an agreement to arbitrate was ripe for decision on the merits by the state court.

Pulte argues it did not waive its right to remove because it merely filed a response

---

[2] Diversified also argues in its reply brief that Pulte waived its right to remove because it filed a Third-Party Complaint seeking indemnity against Diversified in a related action now pending in Maricopa County Superior Court. Doc. 16 at 3-5. The Court "will not consider new arguments raised for the first time in a reply brief." *Bach v. Forever Living Prods. U.S., Inc.,* 473 F. Supp. 2d 1110, 1122 n.6 (W.D. Wash. 2007) (citing *Lentini v. Cal. Ctr. for the Arts,* 370 F.3d 837 n.6 (9th Cir. 2004)); *see Gadda v. State Bar of Cal.,* 511 F.3d 933, 937 n.2 (9th Cir. 2007).

to Diversified's application within ten days as required under Arizona Rules of Civil Procedure 7.1(a). Once a party has made an application to the court for an order, a party opposing that application "shall within ten days thereafter serve and file any answering memorandum." Ariz. R. Civ. P. 7.1(a). If a party does not file a response within ten days, "the court may dispose of the motion summarily." Ariz. R. Civ. P. 7.1(b). Pulte argues it had to file its response to Diversified's application on August 9, 2012, so as to comply with the ten-day rule under 7.1(a). The Court finds, however, that the ten-day period did not begin to run until Pulte had been served with Diversified's application on August 9, 2012. *See Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC*, 226 P.3d 1046, 1052 (Ariz. Ct. App. 2010) ("[T]he non-moving party must file its response (pursuant to Rule 7.1(a) and absent order of the court) within ten days after service."). That Pulte filed a response prior to the deadline further supports Diversified's argument that Pulte elected to litigate the issue in state court and abandoned its right to a federal forum.

Before removing the action, Pulte asked Diversified for permission to supplement its response. Diversified declined, and filed its reply. Pulte then removed the action to this Court.

Pulte's actions in state court constitute more than the mere filing of a responsive pleading. Pulte filed its response early, and did so in an action designed for summary decision by the state court. This suggests that Pulte elected to accept a decision from the state court. Pulte's later request to supplement its response also manifested a clear intent to have the state court decide the issue. It was only when Diversified declined to agree that Pulte removed to this Court. The Court concludes that these actions clearly showed an intent on the part of Pulte to obtain a decision from the state court, followed by a strategic removal to this Court when Pulte thought the decision might be made without its supplemental briefing. Pulte waived its right to remove. The Court need not consider Diversified's argument that Pulte lacked the right to remove under 28 U.S.C. § 1441.

**III.    Application to Stay Arbitration Proceedings by Roadrunner.**

Although the Diversified action will be remanded to state court, the Roadrunner action remains. The Court accordingly will address Roadrunner's application for stay.

Roadrunner argues that the Agreement's arbitration provision is unenforceable because it lacks consideration and mutuality. Doc. 1-1 (CV-12-2177). Pulte contends that the arbitration provision requires application of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, and that the provision is enforceable under the FAA and Arizona law. Doc. 4 at 3 (CV-12-2177).

**A.    Standard for Granting a Motion to Stay Arbitration.**

Roadrunner filed its application to stay arbitration under A.R.S. § 12-1502(B). That statute sets forth the grounds upon which the validity of an arbitration provision may be challenged:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

A.R.S. § 12-1502(B).

The grounds are identical to those under the FAA. *See* 9 U.S.C. § 2 ("A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). Indeed, they must be. *See Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) (holding that a California state law requiring judicial review of certain claims violated the Supremacy Clause because in enacting section 2 of the FAA "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements."). The Court will thus rely on cases applying the FAA to determine the enforceability of the arbitration provision.

Congress enacted the FAA to overcome judicial resistance to arbitration. *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006).  Section 2 embodies a national policy favoring arbitration by placing arbitration agreements on equal footing with all other contracts. *Id.* at 443-44.

Under the FAA and A.R.S. § 12-1502(B), a court determines only whether an enforceable agreement to arbitrate exists.  *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126,1130 (9th Cir. 2000); *Stevens/Leinweber/Sullens, Inc. v. Holm Dev. & Mgmt., Inc.* (*Stevens*), 795 P.2d 1308, 1311, n.3 (Ariz. Ct. App. 1990).  This limited review stems from the concept of separability endorsed by the United States Supreme Court in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).  Thus, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye*, 546 U.S. at 445-46.  The challenge must "be directed specifically to the agreement to arbitrate before the court will intervene." *Rent-A-Ctr., W., Inc. v. Jackson*, 130 S.Ct. 2772, 2778 (2010).

**1.    Consideration.**

Roadrunner argues that the arbitration provisions must be viewed in isolation and that "separate consideration for the arbitration clause must exist if the clause is to be upheld." Doc. 1-1 at 8 (CV-12-2177).  Roadrunner relies primarily on the decision in *Stevens*, which held that a unilateral arbitration provision was unenforceable for lack of consideration.  795 P.2d at 1313.  This Court, however, agrees with the conclusion reached in *Equal Emp't Opportunity Comm'n v. Cheesecake Factory, Inc.*, 2009 WL 1259359, *4, n.1 (D. Ariz. 2009), that "[b]ecause the FAA applies state law only to the extent that it is not hostile to arbitration, *Doctor's Assocs.*, 517 U.S. at 686-87, the state law requirement of separate consideration for arbitration clauses in *Stevens*, 795 P.2d at 1313, does not apply in this case." *See also Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 453 (2d Cir. 1995) ("A doctrine that required separate consideration for arbitration clauses might risk running afoul of [the strong federal policy favoring arbitration]."); *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 169 (6th

Cir. 1989) ("*Prima Paint* may . . . arguably be interpreted as implying that an arbitration clause is an independent contract that is separable from the main contract in which it is found and therefore must have all of the essential elements of a contract, including consideration. Such an interpretation of *Prima Paint* would, however, clearly be inappropriate given the Supreme Court's recent decisions in several arbitration cases." (citation omitted)).

The Court finds that lack of consideration is a defense to the formation of the Agreement, not a defense to the enforceability of the arbitration provision under § 2 of the FAA. A valid contract requires consideration, but separate consideration is not required to enforce each provision of the contract. Provisions within a valid contract are enforceable so long as the "terms are sufficiently clear so that one can state with certainty the obligation involved." *Malcoff v. Coyier*, 484 P.2d 1053, 1055 (Ariz. Ct. App. 1971).

Under A.R.S. § 12-1502(B) and in keeping with the FAA, the Court's review is limited to the enforceability of the arbitration provision. *See U.S. Insulation,* 705 P.2d at 494 ("In light of *Prima Paint* and the limited role of the courts as set forth in § 12-1502, we think it clear that the language of § 12-1501 stating that an arbitration clause shall be valid, enforceable and irrevocable "save upon such grounds as exist in law or in equity for the revocation of any contract" refers to grounds alleged with respect to the formation of the arbitration agreement itself, not the underlying contract." (citations and quotation marks omitted)). Because Roadrunner's lack of consideration claim goes to the validity of the Agreement and not to the validity of the arbitration provision, the Court cannot consider it. "[T]he contract's validity is considered by the arbitrator in the first instance." *Buckeye*, 546 U.S. at 445-46.

### 2. Mutuality.

To constitute a contract, a writing must manifest the parties' intent to be bound. *Keith Equip. Co. v. Casa Grande Fin. Co.*, 928 P.2d 683, 685 (Ariz. Ct. App. 1996). Roadrunner asserts that the arbitration provision lacks mutuality because it unilaterally gives Pulte the power to require Roadrunner to participate in arbitration. Doc. 1-1 at 9

(CV-12-2177). Pulte argues that the arbitration provision does not lack mutuality because "Pulte is obligated to arbitrate homeowners' claims, and Roadrunner is obligated to arbitrate Pulte's claims against it that are based on the homeowners' claims arising out of Roadrunner's work." Doc. 4 at 10 (CV-12-2177). Pulte contends it would have no power to demand arbitration or specify the forum if Roadrunner were to make an affirmative claim against it. *Id.* at 11. The Court agrees.

The arbitration provision applies only when a homeowner makes a claim against Pulte for Roadrunner's work. If the homeowner demands arbitration against Pulte, then Pulte can demand that Roadrunner participate in the arbitration. The provision does not provide Pulte the unilateral right to demand arbitration in all disputes with Roadrunner, nor is this a case where Pulte has reserved to itself several remedies while limiting Roadrunner only to arbitration. *See R & L Ltd. Invs., Inc. v. Cabot Inv. Props., LLC*, 729 F. Supp. 2d 1110, 1117-18 (D. Ariz. 2010). The provision reflects the sensible agreement that claims regarding Roadrunner's work, that are made in an arbitration proceeding by a homeowner, must be resolved in that arbitration proceeding by both Pulte and Roadrunner. The Court finds no "overall imbalance in the rights imposed by this bargain." *Batory v. Sears, Roebuck and Co.,* 456 F. Supp. 2d 1137, 1140 (D. Ariz. 2006). Accordingly, lack of mutuality is not a basis for holding that the arbitration provision is unenforceable.

Having found that there is an agreement to arbitrate and that Roadrunner has not shown the arbitration provision to be invalid, the Court will order Roadrunner to proceed to arbitration. *See* A.R.S. § 12-1502(B) (instructing the court to order the parties to proceed to arbitration if an agreement to arbitrate is found).

**IT IS ORDERED:**

1. Diversified's motion to remand (Doc. 10) is **granted**. The Clerk shall remand the Diversified action (CV 12-1880) to Maricopa County Superior Court.

2. Roadrunner's application to stay arbitration proceedings (Doc. 1 in CV 12-2177) is **denied**. Roadrunner and Diversified are **ordered** to proceed to arbitration.

1       3.      The Clerk shall terminate this action.

2       Dated this 17th day of December, 2012.

*[signature: Daniel G. Campbell]*

David G. Campbell
United States District Judge